IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | CASE NOS. 3:11-cr-00209-JO-01 |
| ) | 3:15-cv-00575-JO |
| v. ) | |
| ) | OPINION AND ORDER |
| ALEKSEY ALEKSANDROVICH DZYUBA ) | |
| ) | |
| ) | |
| Defendant. ) | |

JONES, Judge:

Aleksey Dzyuba ("defendant") filed a motion pursuant to 28 U.S.C. § 2255, (#139) to vacate, set aside, or correct the sentence imposed in *United States v. Dzyuba,* Case No. 3:11-cr-209-JO-1 (D. Or. May 6, 2013). Defendant sets forth three claims for relief in his motion: (1) actual innocence, (2) ineffective assistance of counsel and (3) a *Brady* violation. Upon review of the record, I conclude defendant's claims for relief lack merit, and an evidentiary hearing is unnecessary because defendant alleged no facts that would entitle him to relief. For the reasons set forth below, defendant's § 2255 motion is DENIED.

## BACKGROUND

On March 31, 2011, defendant picked up three siblings, Toviy, Elina, and Yana Sinyayev, all heroin addicts, from their home. After dropping off Yana, defendant proceeded with Toviy and Elina to the parking lot of a Dollar Tree store in Northeast Portland. Toviy and

1- OPINION AND ORDER

Elina were experiencing heroin withdrawal symptoms but neither had money to buy more heroin. While in the Dollar Tree store parking lot, Toviy and Elina agreed to participate in defendant's scheme to return stolen merchandise to retail stores in exchange for gift cards. The defendant would resell the gift cards for cash. In exchange for their assistance, defendant gave Toviy and Elina a balloon of heroin. Toviy went into the Dollar Tree store bathroom and prepared the heroin. When he returned to the vehicle, he injected the heroin into his arm and his sister's arm. After Toviy recovered from his withdrawal symptoms, defendant drove Toviy and Elina to a Home Depot store where Toviy returned stolen merchandise and procured a gift card. Toviy gave the gift card to the defendant and they repeated the scam at two additional stores.

Around 9 p.m., defendant dropped Toviy and Elina off at their home. Before they left the car, defendant gave Toviy more heroin-filled balloons. Toviy and Elina went to Toviy's room and ingested more heroin, saving some for the next day. Toviy then gave Elina her own balloon to keep.

Later that evening, two of Toviy's school friends arrived at his house. Toviy provided heroin from a balloon and the three boys ingested it. Sometime after 10 p.m. all three boys left the house and went to a Safeway grocery store. After they returned home, the two friends left and Toviy went to bed, leaving a balloon of heroin in his wallet.

Around 3:30 a.m., Toviy's mother checked on him and observed him sleeping peacefully. However, when she returned at 6:30 a.m. to wake Toviy's brother for school, Toviy was making gurgling sounds, had foam and vomit around his mouth and nose, and had a bloody nose. Toviy was unresponsive. Elina and Yana came into the bedroom and Elina attempted CPR while Yana called 911. The paramedics arrived and found Toviy unconscious and experiencing agonal breathing. Unable to resuscitate Toviy, the paramedics transported him to Providence Milwaukie

2- OPINION AND ORDER

Medical Center ("Providence") where a toxicological analysis of Toviy's blood occurred. Thereafter, Toviy was sent to Oregon Health and Sciences University ("OHSU") where he was placed on life support. Toviy never regained consciousness and on April 3, 2011, life support was terminated and Toviy died shortly thereafter.

An autopsy performed by Dr. Christopher Young ("Dr. Young") found fatal levels of heroin derivatives in Toviy's blood and a traumatic brain injury resulting from a heroin overdose. Dr. Young, relying on the Providence toxicology report, concluded that Toviy died as a result of toxic effects from heroin. (#113, p.8) During a pretrial offer of proof, defendant raised the issue of alcohol as a possible contributing factor to Toviy's death. Two doctors who treated Toviy at OHSU testified that alcohol was not present in Toviy's blood. (#122, pp.7, 23) At trial, Dr. Young testified that no alcohol was present in Toviy's body. (#124, p. 239).

In his preparation for trial, defense attorney Ryan Scott ("Scott") consulted a medical expert, Dr. Julien, a noted anesthesiologist and pharmacologist. Dr. Julien reviewed the Dr. Young's autopsy report, the Providence toxicology report, and records from both Providence and OHSU. He concluded the cause of death was acute heroin overdose and found no alternative explanation for Toviy's death. During their investigation, the police conducted a search of Toviy's bedroom and found an unopened balloon of heroin in Toviy's wallet.

This court convicted defendant of two counts: (1) distribution of heroin resulting in death; and (2) distribution of heroin. Defendant appealed to the Ninth Circuit, which affirmed the convictions. Subsequently, defendant filed the Section 2255 motion before me. As the government prepared its response to defendant's motion, Scott refused to release his case records and the government deposed him. Following the deposition, the government filed a response.

## DISCUSSION

### I. Actual Innocence

#### Legal Standard

Unless a defendant can show cause, prejudice, or actual innocence, a substantive legal argument is procedurally defaulted when it is not raised on direct appeal. *United States v. Ratigan,* 351 F. 3d 957, 962 (9th Cir. 2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998). Here, defendant claims actual innocence. To have a credible actual innocence claim, defendant must support his claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo,* 513 U.S. 298, 324 (1995). Furthermore, "because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup,* 513 U.S. at 324. Finally, to use the actual innocence claim for relief, defendant "must show that in light of all of the evidence, it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *United States v. Avery,* 719 F. 3d 1080, 1083 (9th Cir. 2013) (internal quotations omitted) (quoting *Schlup,* 513 U.S. at 327); *Sawyer v. Whitley,* 505 U.S. 333, 376 n. 5 (1992).

#### Discussion

In his motion, defendant offers three arguments in support of his actual innocence claim. He alleges that: (1) Toviy did not die from heroin; (2) alcohol contributed to Toviy's death; and (3) the heroin that killed Toviy came from another source. Because defendant neither offered new evidence nor showed a likelihood that no reasonable juror would have found him guilty beyond a reasonable doubt, his actual innocence claim fails.

In his first argument, defendant challenges the Providence toxicology report contending that it did not indicate the presence of a toxic type of morphine metabolite in Toviy's blood. He apparently also claims the toxicology report supported an alternative cause of death from sepsis. This argument cannot be sustained because both Dr. Young and Dr. Julien reviewed the Providence toxicology report and concluded that it showed Toviy's blood contained fatal levels of morphine metabolites and that it suggested no other cause of death. Neither doctor noted any deficiency or ambiguity in the medical data from the Providence toxicology report. Defendant failed to present new, reliable evidence that was not before the trial court because the Providence toxicology report was available before trial, summarized in Dr. Young's trial testimony, and supported the conclusion that Toviy died from a heroin overdose. Accordingly, defendant's first argument fails. Schlap, 513 U.S. at 324.

In his second argument, defendant contends that alcohol contributed to Toviy's death and that the heroin provided by defendant was, at most, a contributing factor. At trial, the court heard an offer of proof in which two of Toviy's treating physicians at OHSU testified that Toviy had no alcohol in his system. Dr. Young testified that alcohol hypothetically could contribute to a heroin overdose, but in this case it was not because Toviy had no alcohol in his system. Here, defendant reargues evidence already considered at trial. Because defendant offers no new evidence for this court to consider, his second claim fails. *Schlup*, 513 U.S. at 324.

In his final claim of actual innocence, defendant contends Toviy died from an alternative source of heroin. Defendant relies on the trial testimony of Elina who reported that defendant only gave Toviy two balloons. One balloon was given to Elina and the other was used that night by Toviy, Elina, and his two friends. Thus, defendant contends he did not supply the third balloon found in Toviy's wallet. He argues that Toviy had access to alternative sources of heroin

5- OPINION AND ORDER

which caused Toviy's death. However, Elina's testimony does not support defendant's argument. Elina testified that she was unsure whether Toviy had one or two more balloons. (#123, p. 131) Even if Elina's testimony supported defendant's argument, the evidence was presented at trial and is not new reliable evidence. Since defendant offers no new evidence, his third claim fails. *Schlup,* 513 U.S. at 324.

## II.    Ineffective Assistance of Counsel

### Legal Standard

To establish ineffective assistance of counsel, a defendant must show: (1) his legal representation was so deficient it amounted to a denial of his Sixth Amendment right to counsel; and (2) there is a reasonable probability that the "deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984); *accord United States v. Withers,* 618 F. 3d 1008, 1019 (9th Cir. 2010); *see also Knowles v. Mirzayance,* 556 U.S. 111, 122 (requiring that a defendant must show both deficient performance and prejudice to prove ineffective assistance of counsel). If defendant fails to prove either prong, the entire ineffective assistance of counsel claim fails. *Strickland,* 466 U.S. at 700. Regarding the first prong of the *Strickland* test, "the defendant must show that the counsel's representation fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *accord Withers,* 618 F. 3d at 1019. Regarding the second prong, a "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Matylinsky v. Budge,* 577 F. 3d 1083, 1091 (9th Cir. 2009) (quoting *Stickland,* 466 U.S. at 694). The defendant has the burden of showing that the errors "actually had an adverse effect on the defense." *Stickland,* 466 U.S. at 693.

Judicial inquiry into counsel's performance "must be highly deferential," and strategic choices as to how to defend a case are "virtually unchallengeable." *Stickland,* 466 U.S. at 689,

6- OPINION AND ORDER

690. Also, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Stickland,* 466 U.S. at 689.

To satisfy the prejudice prong, "a challenger must demonstrate a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington v. Richter,* 562 U.S. 86, 104 (2011). However, "it is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington,* 562 U.S. at 104.

## Discussion

In his motion, defendant submits numerous arguments claiming ineffective assistance of counsel. He asserts Scott failed to: (1) file a motion to exclude documents and exhibits; (2) test the purity of the heroin; (3) advise defendant of his right to testify at his trial; (4) subpoena Yana to testify; (5) dispute that defendant supplied the heroin found in Toviy's wallet; and (6) object to the twenty year sentence imposed for his distribution of less than five grams of heroin charge.

First, the defendant argues Scott should have moved to exclude the blood samples used at trial. Defendant alleges that there was no proof to establish whether the blood samples were actually drawn from Toviy, were drawn in the proper order or were handled and stored correctly. However, in his report to Scott, Dr. Julien expressed no concerns about the blood samples. Scott testified at his deposition that Dr. Julien expressed no concerns about the blood samples. Moreover, based on his experience as a lawyer, Scott believed the blood sample documents would be admitted at trial and any objection would have been futile. (#147-1, p. 42) Defendant fails to overcome the presumption that Scott's decision regarding the blood samples was sound trial strategy. *Strickland,* 466 U.S. at 689.

7- OPINION AND ORDER

Second, defendant alleges Scott's failure to test the purity of the heroin found in Toviy's wallet prejudiced defendant because it prevented him from challenging the government's theory of the case regarding the strength of the heroin Toviy consumed. Defendant contends that had the purity of the heroin been tested, it would have proven the heroin Toviy ingested was too weak to cause an overdose. Scott admits that, in retrospect, he should have tested the purity of the heroin. However, any contention that a purity test of heroin <u>not</u> ingested by Toviy would have yielded a different result from the heroin Toviy ingested is speculative at best. Furthermore, Elina testified that the heroin they actually consume was strong. (#123, p. 135) Both Young and Julien concluded that Toviy died because of a heroin overdose. Scott's failure to have the purity of the heroin tested did not alter the outcome of the trial and thus, did not prejudice defendant. *Harrington,* 562 U.S. at 104.

Third, the defendant claims he did not know he could testify at trial, and if he had known, he would have done so. He claims Scott prejudiced his case by failing to inform him of his constitutional right to testify. In his deposition, Scott recalls being worried the defendant would want to testify because he was so passionate about his defense. However, Scott was relieved when defendant, a week before trial, informed Scott that he did not intend to testify. (#147-1, p. 57) Defendant knew of his right to testify and voluntarily chose not to do so. Defendant failed to show that Scott made an unprofessional error that caused the adverse outcome of the trial. *Harrington,* 562 U.S. at 104.

Fourth, defendant claims Scott failed to call Yana to testify. Defendant argues Yana's testimony would have supported his argument that Toviy had access to an alternative source of heroin, specifically Yana's. However, Scott's decision not to call Yana to testify was a strategic one. In his deposition, Scott recalled that Yana had been interviewed previously by an

investigator and was not forthcoming. Scott believed Yana would not admit to providing Toviy with heroin because in the process she would also be admitting to her family that she was using heroin and that she was culpable for her brother's death. Furthermore, if she had taken the stand and denied giving heroin to Toviy and the court found her credible, it would have undermined the defense's argument regarding the existence of alternative sources of heroin. Scott believed it was better to let the jury draw its own inferences about whether Toviy had access to an alternative supply of heroin. (#147-1, p. 59-61) Defendant failed to overcome the presumption that Scott's strategic decision was sound trial strategy. *Strickland,* 466 U.S. at 689.

Fifth, during the trial Scott admitted to the court that defendant would not dispute that the balloon found in Toviy's wallet came from defendant. (#124, p. 272) Defendant claims that this concession weakened to his case. However, defendant admits meeting with Toviy on March 31 and providing him with multiple heroin filled balloons. Additionally, defendant provides no evidence supporting his conclusion that the heroin in the wallet did not come from him or that Toviy had access to another source of heroin the night of March 31. It is not sufficient to claim that Scott's concession could have had a conceivable effect on his trial's outcome, defendant must show that the concession deprived him of a fair trial, which he has not done. *Harrington,* 562 U.S. at 104.

Finally, defendant claims Scott failed to object to the 20-year sentence imposed on Count Three (distribution involving less than five grams of heroin.) Defendant argues he should have received only a thirty-seven month sentence. Defendant claims that distribution of less than five grams of heroin scores a base offense level of twelve, resulting in a sentencing guideline range of 30-37 months. Defendant ignores that a court may consider relevant conduct when imposing a sentence:

9- OPINION AND ORDER

> In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law. U.S. Sentencing Guidelines Manual § 1B1.4 (2014).

Here, in sentencing the defendant, the court considered defendant's relevant conduct, including the fact that his heroin resulted in a death. Scott did not err in not objecting to the sentence imposed. *Strickland*, U.S. at 689.

## III. *Brady* Violation

### Legal Standard

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "[T]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-10 (1976). However, "if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed." *Agurs*, 427 U.S. at 112. There are three components to a *Brady* violation (1) the evidence at issue must be favorable to the accused; (2) the evidence must have been suppressed by the state and (3) the suppression was prejudicial. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

### Discussion

Defendant claims the prosecution violated his *Brady* rights by failing to provide information regarding the purity of the heroin found in Toviy's wallet. Because the prosecution never tested the purity of the heroin, no suppression of evidence occurred. Additionally, because

10- OPINION AND ORDER

the purity was not tested, defendant could not prove that the test results from a purity analysis would have been favorable to him. As such, defendant fails to meet the burdens required in proving a *Brady* violation.

## CONCLUSION

Construing the § 2255 motion in a manner most favorable to the *pro se* defendant, and concluding the claims for relief lack merit and support, the motion is DENIED. Further, Defendant's request for an evidentiary hearing is DENIED. Pending motions, if any, are DENIED AS MOOT.

The court declines to issue a certificate of appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. §2253 (c)(2).

IT IS SO ORDERED.

DATED this ___ day of August, 2015.

Robert E. Jones
Senior District Court Judge

11- OPINION AND ORDER